## 66134, 66312. FORTSON v. COTTON STATES MUTUAL INSURANCE COMPANY; and vice versa.

DEEN, Presiding Judge.

Fortson filed a two-count complaint against Cotton States Mutual Insurance Company after it refused to pay a claim for fire damages to his home and contents. On the first count, the jury awarded Fortson $75,800, plus $18,950 for a bad faith penalty and $8,500 attorney fees. The second count alleged that the insurance company paid off the mortgages on the property and took assignments of the underlying security instruments to harass and intimidate him and to destroy his credit. The insurance company filed a motion for partial summary judgment which went to the allegations contained in the second count, and the court below granted the motion. Fortson appeals from this order in case number 66134, and in case number 66312 the insurance company appeals from that portion of the judgment awarding damages for bad faith and attorney fees.

### Case Number 66134

The trial court did not err in granting Cotton State's motion for partial summary judgment because the assignment of the security interests was made pursuant to and in accordance with the clauses in the policy which set forth the mortgagee's interests and obligations. The relevant provision provides: "If the company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of the payment of loss to the mortgagee, be subrogated to the mortgagee's rights of recovery, but without impairing mortgagee's right to sue, or it may pay off the mortgage debt and require an assignment thereof and of the mortgage."

The standard mortgagee clause creates a separate contractual relationship between the insurer and the mortgagee and the mortgagee cannot be affected by any act or default of the mortgagor. *Pacific Ins. Co. v. R. L. Kimsey Cotton Co.,* 114 Ga. App. 411, 412 (151 SE2d 541) (1966). The mortgagee can enforce its right of recovery regardless of the defenses that the insurer may raise against the insured. *Aetna Life & Cas. Co. v. Charles S. Martin Distributing Co.,* 120 Ga. App. 133 (169 SE2d 695) (1969). As indicated by the quoted portion of the policy, Cotton States is entitled to take an assignment of the mortgage when it denies liability under the policy, and when it pays off the mortgage the company's interest is protected to the extent of the value remaining in the property. The mortgagor is benefited by this arrangement because he is no longer required to make payments to the mortgagee while the dispute exists over

whether or not the insurance company accepts liability for the loss that has been incurred. If the dispute is resolved in favor of the insured, the insurance company would have to cancel the debt because it would be liable for the claim. See *American Ins. Co. v. Hattaway,* 194 Ga. 15 (20 SE2d 406) (1942); *Gainesville Nat. Bank v. Martin,* 187 Ga. 559 (1 SE2d 636) (1939).

In the instant case, Cotton States had an obligation to pay the mortgagees when it took an assignment of his interests. By taking the assignment, it was simply doing what it was entitled to do under the contract of insurance.

*Case Number 66312*

1. Cotton States asserts error in the trial court's denial of its motion for a directed verdict as to the bad faith penalty and attorney fees. The evidence showed that at all stages of the litigation the insurance company asserted arson as a defense, that it reasonably relied on this defense, and, on appeal, contends there was no evidence to support the jury verdict.

The insurance company presented an expert arson witness, an engineer, who testified that his investigation revealed the presence of burn patterns in the area where the fire originated that were consistent with an intense liquid fuel burn pattern, and that the fire did not originate in the electrical circuit box as contended by the appellee. The appellee, in turn, presented two expert witnesses. The first testified that he was one of the first firefighters at the scene and that he did not see any evidence of arson. He thought that the fire started in the electrical circuit boxes and did not notice evidence of flammable liquids being poured on the floor in the area near the circuit boxes, although there were a number of flammable materials such as paint cans in the area. On cross-examination, he testified that a great deal of electrical arcing had taken place at the circuit box while they were fighting the fire, but it was impossible for him to determine whether the arcing had caused the fire or if it just occurred during the fire. He did not know if an engineer could determine the matter. He admitted that the burn patterns on the porch, as shown in the photographs supplied for his examination, could be caused by the run-down of flammable liquids. The second witness, the assistant fire chief and former Hall County arson investigator, testified that there was nothing at the scene to arouse suspicion of arson, but that he did not conduct a subsequent investigation and would not dispute the findings of a qualified person who did conduct a close, in-depth investigation of the fire.

The insurance company claimed that Fortson had a motive for arson and presented evidence of his precarious financial condition.

Certain aspects of his financial condition were stipulated and showed that he had $257,244.99 in outstanding debts; $56,620 in pending suits on accounts; two unsatisfied judgments against him totaling $12,209.33; $1,537.88 in unpaid property taxes; and $2,444.25 in unpaid ad valorem taxes. The insurance company introduced the testimony of a certified public accountant who testified that he believed appellee's financial condition was "rather desperate," based upon information supplied by appellee's bookkeeper and obtained by subpoena. This material showed that Fortson failed to file income tax returns in 1979 and 1980, that there was no outside information as to income after 1980, that various business and personal bank accounts were closed or inactive in 1979 and 1980. Payments on two small lines of credit were past due, mortgage payments on his house were seven months in arrears, and interest payments on a second mortgage payment were three months past due. Fortson's only apparent source of income was from the operation of a small convenience store and part-time work in the construction industry. The accountant also opined that a person who had to sell his assets to pay his debts was not in good financial condition. Fortson challenged the accountant's opinion and claimed his assets were undervalued by the insurance company's expert because he was credited with only the forty percent valuation used for property tax purposes, claimed his real estate assets were worth $551,950, and that he had a net worth of $221,893.08. He did not offer any evidence such as appraisals to support the claimed value of his assets and did not state the basis for his opinion. See *McRae v. Britton,* 144 Ga. App. 340, 345 (240 SE2d 904) (1977).

To support a cause of action for bad faith penalties and attorney fees against an insurance company for refusal to pay a claim, it must be shown that the refusal was made in bad faith. OCGA § 33-4-6 (Code Ann. § 56-1206). The insured bears the burden of proving bad faith, which is defined as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746, 747 (125 SE2d 709) (1962). See also *North British &c. Ins. Co. v. Mercer,* 90 Ga. App. 143 (82 SE2d 41) (1954); *U. S. Fidelity & Guaranty Co. v. Woodward,* 118 Ga. App. 591 (164 SE2d 878) (1968). "The [codal] provision for damages and attorney's fees, being in the nature of a penalty, must be strictly construed, and in order for a recovery of such items to be had it must appear from the evidence that the company in bad faith refused to pay the claim within 60 days after a demand had been made." *Interstate Life & Acc. Ins. Co. v. Williamson,* 220 Ga. 323, 325 (138 SE2d 668) (1964); *Alliance Ins. Co. v. Williamson,* 36 Ga. App. 497 (137 SE 277) (1927). As this provision

is a penalty, which is not favored at law, the right to recovery must be clearly shown. *Interstate Life & Acc. Ins. Co. v. Williamson,* supra; *Progressive Cas. Ins. Co. v. Avery,* 165 Ga. App. 703 (302 SE2d 605) (1983). Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. *U. S. Fidelity & Guaranty Co. v. Woodward,* supra. Where the question of liability is close and the facts are disputed so that the insurer has reasonable grounds to contest the claim, no penalty should be permitted. *Hartford Fire Ins. Co. v. Lewis,* 112 Ga. App. 1 (143 SE2d 556) (1965). "The test of bad faith within the meaning of the law in such cases is as of the time of trial, in the final analysis, and not at the time of refusal to pay upon demand. Whatever the facts are at the time of such refusal to pay if at the trial there was a reasonable ground for the insurer to contest the claim there can be no finding against the insurance company for bad faith and attorney's fees regardless of the outcome of the case." *Interstate Life & Acc. Ins. Co. v. Williamson,* 110 Ga. App. 557, 560 (139 SE2d 429) (1964). In determining whether the evidence is sufficient to support the verdict, "[t]he proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979).

In the instant case, the insurance company asserted arson as a defense to paying Fortson's claim, and the testimony of its expert arson witness, and the failure to repudiate his findings by Fortson's own witnesses, shows that appellant's reliance upon this defense was not frivolous or unfounded. Moreover, the stipulated evidence as to the appellee's debts and the judgments against him, as well as the certified public accountant's testimony as to his financial position, clearly indicate that he was having financial problems. Circumstantial evidence can be used to prove arson. *Rollins v. Great Southwest Fire Ins. Co.,* 162 Ga. App. 139 (290 SE2d 353) (1982). An insurance company can prevail in an arson defense based solely on circumstantial evidence if it shows that the fire was of incendiary origin and that the plaintiff had both the opportunity and motive to have the fire set. Carpenter v. Union Ins. Society of Canton, Ltd., 284 F2d 155 (4th Cir. 1960); Boon v. Royal Indemnity Co., 460 F2d 26 (10th Cir. 1972).

Accordingly, we find that the trial court erred in failing to grant Cotton States' motion for a directed verdict as to bad faith penalties and attorney fees because the company had a reasonable defense, as a matter of law, to the claim.

2. The insurance company also argues that certain closing

arguments made by the appellee's counsel were so inflammatory that the entire judgment should be set aside. Appellant, however, did not enumerate this issue as error and the other enumeration, which goes only to the bad faith penalties and attorney fees, cannot be enlarged to include issues not made therein. *Burke v. State,* 153 Ga. App. 769 (266 SE2d 549) (1980).

*Judgment reversed in part. Banke and Carley, JJ., concur.*

DECIDED SEPTEMBER 7, 1983 —
REHEARING DENIED SEPTEMBER 27, 1983 —

*Robert E. Andrews,* for appellant.
*Clayton H. Farnham,* for appellee.