**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**Ilene TRUMBLE and Darrell Widman, husband and wife, Defendants.**

**Civ. No. 86–3035.**

United States District Court, D. Idaho.

May 1, 1987.

Michael E. McNichols, Clements Brown & McNichols, Lewiston, Idaho, for plaintiff.

Robert E. Kinney, Orofino, Idaho, for defendants.

## ORDER

RYAN, District Judge.

This action was originally filed on April 7, 1986, as a declaratory judgment action. The plaintiff insurer claims that the defendant insured set fire to the dwelling covered by a fire insurance policy issued by plaintiff, and therefore, the fire was not accidental and not covered by the policy. The insurer also claims concealment and/or misrepresentation which, by policy provision, voids the policy. The plaintiff insurer requests that the court declare such to be the case and the policy to provide no coverage.

On October 1, 1986, defendant insureds filed an Answer and Counterclaim. The insureds claim that the fire was, in fact, accidental and that the plaintiff owes an obligation pursuant to the policy, as well as for emotional distress damages and punitive damages. Insureds also counterclaim on a theory of bad faith on the part of the insurer. The insureds demand a trial by jury.

On or about November 17, 1985, a fire destroyed the defendants' dwelling house. At the time, Ilene Trumble was the named insured on fire insurance policy No. 12–23–4453–1. However, Darrell Widman resided in the home as Trumble's common-law spouse.

The fire broke out just before 4:00 a.m. on November 17, 1985. Either on the same day or the next day, in compliance with duties imposed upon the insured, the insurance claim office in Clarkston, Washington, was contacted and a request that a claim be filed and processed was made. As will be discussed more fully below, the insurer began an investigation on November 18, 1985, including the retaining of Investigative Services, Inc., of Hayden Lake, Idaho, who assigned Investigators John Moore and Robert Johnson to the case. Moore conducted a physical investigation of the scene and Johnson conducted interviews. The defendants were interviewed. A sworn statement and proof of loss was submitted on or about December 30, 1985. An oral examination under oath of the defendants took place on March 20, 1986. On

March 31, 1986, defendants were advised by plaintiff that the proof of loss submitted on December 30, 1985, could not be accepted. This action was commenced on April 7, 1986.

█ The plaintiff's Motion for Partial Summary Judgment relates solely to the claim of bad faith brought in defendants' Counterclaim. The issue and the motion appear quite easily decided. As a starting point, the Idaho Supreme Court, on December 29, 1986, in *White v. Unigard Mutual Insurance Co.*, 112 Idaho 94, 730 P.2d 1014 (1986), in a case certified by Judge Callister, definitively recognized a tort action, distinct from an action on the contract, for an insurer's bad faith in handling the claims of an insured. The *White* court also specifically stated that it would not recognize a private right of action pursuant to Idaho Code § 41–1329. Therefore, the issue presented in this action is whether the counterclaiming insureds can present enough evidence to this court to establish at least an inference of bad faith so as to allow that claim to go to trial.

Plaintiff presents the following evidence to prove that it has diligently processed the claim, refused payment in good faith, and to negate any inference of bad faith. Plaintiff was notified of the fire on the same day of its occurrence, November 17, 1985. Plaintiff commenced its investigation on that date. Plaintiff retained the services of Investigative Services Group, Inc. (ISG), of Hayden Lake, Idaho, on November 17, 1985. Plaintiff states that it is policy to have an independent analysis done of the cause and origin of the fire. ISG assigned John Moore and Robert Johnson to the fire. On November 18, 1985, Moore commenced his investigation at the scene. Johnson interviewed witnesses and prepared an investigative report. Johnson took and recorded statements of defendants on December 4, 1985. Moore's investigation of the fire scene included taking samples to North Idaho College Regional Crime Lab for testing.

The conclusion of Moore's report states that some type of liquid accelerant was employed to set the fire as flammable materials similar in composition to gasoline and paint or lacquer thinner were discovered and shown in test results. It was also admitted by the defendants that they were the only two persons in the dwelling when the fire occurred. An examination of the defendants was taken under oath on March 20, 1986, after being rescheduled from February 19, 1986. Soon thereafter, this action was filed.

Plaintiff maintains that the above facts conclusively show that it has acted in good faith and upon the reasonable belief that the fire was not accidentally caused. Plaintiff further maintains that it has the legal right to invoke the jurisdiction of this court by filing a declaratory judgment action to determine issues raised by the facts of the case. Plaintiff claims that it is conceptually impossible for an insurer to be guilty of bad faith when it promptly exercises its rights to have a court of law determine the rights of the parties to an insurance contract.

In opposition, the defendants have submitted the affidavit of Bailey H. Reynolds, who also conducted an investigation of the fire scene. Mr. Reynolds' affidavit delineates the steps and procedures he used to investigate the scene and his conclusions. Reynolds concludes that the fire started as a result of a small grease fire which occurred in the kitchen at 1:30 a.m. on November 17, 1985. Defendants maintain that a small grease fire occurred while cooking pork chops, which was put out by baking soda. Defendants retired to bed and later the house was engulfed in flames. Bailey concludes that the grease fire caused smoldering behind built-in cupboards near the stove which eventually combusted into flame. Bailey asserts that the report completed by Moore neither investigated nor eliminated the possibility of fire starting in the kitchen which would be consistent with the facts and which causes Moore's report to be incomplete. Furthermore, Reynolds discusses at length the various flammable liquids which were located in the house and in the garage which may account for the samples taken by Moore. Reynolds concludes that he is convinced

beyond reasonable doubt that the fire was of accidental origin and he further states, "[a]s such, I do not feel these proceedings were commenced by plaintiff in good faith, and further believe that the defendants have been unjustifiably denied recovery under their policy of insurance." Affidavit of Bailey H. Reynolds, filed Mar. 4, 1987, at 5. It is debatable whether Reynolds is competent to make such statement; however, the thrust of his affidavit is consistent with that conclusion.

Defendants assert that the investigation conducted by the plaintiffs was incomplete and that it is erroneous. While defendants do not have any evidence of the actual state of mind of the plaintiff (which is almost universally the case under this type of cause of action), defendants state that there is an inference from the allegation that plaintiff's conclusion is erroneous and that plaintiff's investigation is incomplete and fails to adequately discuss the possibility of a rekindling of the kitchen fire, that plaintiff did not have a reasonable basis for denying the claim and that perhaps plaintiff's investigation was geared toward a finding of a non-accidental cause from the beginning.

■ The first issue to be addressed is whether the mere filing of a declaratory judgment action can sustain a claim for bad faith. The plaintiff dwells upon this issue. However, the filing of the declaratory judgment action is not the sole basis for defendants' claim of bad faith, so the issue is somewhat misleading and/or inapposite. However, to the extent a claim of bad faith rests entirely upon the filing of a declaratory judgment action, the bad faith claim would be unsupportable. All courts, including this court, have recognized and condoned the use of declaratory judgment actions by insurers. Therefore, merely invoking the right to a declaratory judgment action does not, in and of itself, support an action for bad faith.

The defendants' claim for bad faith addresses the broader issue of the insurer's refusal to pay the claim in accordance with the terms of the policy. As noted in the case of *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1981), cited by the plaintiff, the tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim; that is, would a reasonable insurer under the circumstances have denied or delayed payment on the claim under the facts and circumstances? In other words, there must be an absence of a reasonable basis and some sort of knowledge or reckless disregard of that information on the part of the plaintiff which results in a failure to pay the claim. *Id.* at 868.

■ Therefore, while plaintiff has the right to file a declaratory judgment action, if the action is shown to have an absence of a reasonable basis and that no reasonable basis exists for denying the claim causing denial or delay in payment which is unreasonable, then a claim for bad faith may exist. The bad faith claim takes into account all of the activities of the insurer, including the filing of the declaratory judgment action, in an attempt to prove that there is no reasonable basis for denying the benefits of the policy and that the plaintiff had knowledge or reckless disregard in obtaining the knowledge of the lack of a reasonable basis for denying the claim.

■ Defendants have raised sufficient facts and inferences to withstand summary judgment on the claim of bad faith. Inherently, whether a reasonable basis exists taking into account all the facts and circumstances and whether plaintiff knew of such or simply failed to obtain such knowledge, is factually oriented. While even a showing by the defendants that the plaintiff was erroneous does not make out an action for bad faith, questions regarding reasonableness and knowledge inherently include factual questions. In this case, the affidavit of Reynolds raises sufficient questions regarding the correctness of the plaintiff's position, the reasonableness of the extent of the investigation, and the inference therefrom that the investigation was not completed in good faith, that the issue must go to the jury.

**321**

One casualty in the recognition of the tort of bad faith by the state may well be summary judgment. Bad faith connotes a state of mind, which inherently and nearly always avoids summary dismissal in deference to jury determination. Seemingly, this potentially staggering claim can only be judicially reviewed after the evidence is presented and upon motion for directed verdict. As stated in *Forbus v. Allstate Insurance Co.*, 603 F.Supp. 113 (N.D.Ga. 1984), "the faith of the company should not be judged by the preliminary proofs or other *ex parte* affidavits but at the case made at trial." *Id.* at 116. Similarly, in *Kriz v. Government Employees Insurance Co.*, 42 Or.App. 339, 600 P.2d 496 (1979), it is stated that, "[i]t was not the trial court's function, and it is not our function, to decide issues which are essentially factual, like negligence or bad faith, or issues of credibility. Those are issues for trial." *Id.* 600 P.2d at 501. Recognition of this cause of action, easily pled, may become a very real stumbling block to settlement of pending litigation. However, this federal court, sitting in diversity, must abide by that law as pronounced by the highest court of the State. Lamentably, an inference of bad faith can almost always be suggested by the merest of showing that the insurer's conclusions leading to the denial of the claim, are or may be incorrect or that the insured's investigation was not complete in all details.

The court is mindful that oral argument is normally allowed on summary judgment motions pursuant to Local Rule 6–102. In fact, this motion was set for oral argument on May 18, 1987. However, in preparation for the hearing and after reviewing the record and the briefing of counsel, the court has determined that questions of fact exist to defeat the Motion for Partial Summary Judgment. No amount of oral argument will alter the facts. Therefore, in the interest of preserving the resources of the court and the parties when possible and without affecting the rights of the parties, the court must take the step of vacating the hearing in this matter and rendering its decision on the record as a whole. Therefore, the hearing in this matter currently scheduled for May 18, 1987, will be vacated.

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the hearing in this matter currently scheduled to be conducted by the court on May 18, 1987, should be, and is hereby, VACATED.

IT IS FURTHER ORDERED that plaintiff's Motion for Partial Summary Judgment should be, and is hereby, DENIED.